# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SAFETY SOCKET, LLC,

    Plaintiff,

v.

ALL STATE FASTENER CORP.,

    Defendant.
_____/

ALL STATE FASTENER CORP.,

    Counter-Plaintiff,

v.

SAFETY SOCKET, LLC,

    Counter-Defendant.
_____/

Case Number: 07-CV-15364

JUDGE PAUL D. BORMAN
UNITED STATES DISTRICT COURT

# OPINION AND ORDER
# GRANTING PLAINTIFF/COUNTER-DEFENDANT SAFETY SOCKET, LLC'S
# MOTION FOR CERTIFICATION OF AN IMMEDIATE APPEAL UNDER FEDERAL
# RULE OF CIVIL PROCEDURE 54(b)

Before the Court is plaintiff/counter-defendant Safety Socket, LLC's ("Plaintiff") June 12, 2009 Motion for Certification of an Immediate Appeal under Federal Rule of Civil Procedure 54(b). Defendant/counter-plaintiff All State Fastener Corp. ("Defendants") responded to the Motion on June 26, 2009. Because the relevant facts and legal arguments are sufficiently presented by the parties briefs, the Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e). For the following reasons, the Court GRANTS Plaintiff's Motion.

**I.      BACKGROUND**

The specific facts of the case are as set forth in detail in this Court's May 29, 2009 Opinion and Order Granting in Part and Denying in Part Defendant All State Fastener Corp.'s Motion for Summary Judgment ("May 29, 2009 Opinion and Order"), *All State Fastener Corp. v. Safety Socket, LLC*, No. 07-15364, 2009 U.S. Dist. LEXIS 45287 (E.D. Mich. May 29, 2009) (unpublished). (Dkt. No. 62). In that Order, the Court dismissed with prejudice Plaintiff's fraud and silent fraud claims (Counts III and IV) and allowed Plaintiff's breach of contract and indemnification claims (Counts I and II) to proceed to trial. Plaintiff now seeks the Court's certification to permit an immediate appeal of the May 29, 2009 Opinion and Order's dismissal of Plaintiff's fraud and silent fraud claims.

**II.     ANALYSIS**

    **A.      Legal Standard**

Federal Rule of Civil Procedure 54(b) ("Rule 54(b)") provides "a practical means of permitting an appeal to be taken from one or more final decisions on individual claims, in multiple claims actions, without waiting for final decisions to be rendered on *all* the claims in the case." *Sears, Roebuck & Co v. Mackey*, 351 U.S. 427, 435 (1956). The Court's power under Rule 54(b) is "largely discretionary, to be exercised in light of judicial administrative interests as well as the equities involved, and giving due weight to the historic federal policy against piecemeal appeals." *Reiter v. Cooper*, 507 U.S. 258, 265 (1993) (citation and quotations omitted). Further, Rule 54(b) "does not tolerate immediate appeal of every action taken by a district court." *Gen. Acquisition Inc. v. GenCorp.*, 22 F.3d 1022, 1026 (6th Cir. 1994). "Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining

unresolved claims." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). "The rule is intended to strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants." *Good v. Ohio Edison Co.*, 104 F.3d 93, 95 (6th Cir. 1997).

In evaluating a motion under Rule 54(b), a district court makes two independent evaluations: (1) whether the court's resolution of the claim was final; and (2) if so, whether there is any just reason for delay in finalizing the judgment on the claim. *See Curtiss-Wright Corp.*, 446 U.S. at 8.

The first step "is satisfied where some decision made by the district court ultimately disposes of one or more but fewer than all of the claims or parties in a multi-claim/multi-party action." *Gen. Acquisition, Inc.*, 23 F.3d at 1026-27. To aid in resolving the second step, the Sixth Circuit has articulated the following nonexhaustive list of factors:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Lowery v. Fed. Express Corp.*, 426 F.3d 817, 821-22 (6th Cir. 2005) (citations omitted).

### B. Finality

Plaintiff contends that they have satisfied both of the steps in *Curtiss-Wright Corp.* Defendant does not appear to challenge the finality of this Court's decision dismissing Plaintiff's fraud and silent fraud claims. Given that the Court's May 29, 2009 Opinion and Order dismissed Plaintiff's fraud and silent fraud claim with prejudice, while allowing Plaintiff's breach of contract

3

and indemnification claims to proceed to trial, the Court determines that its decision on those claims was sufficiently "final" under Rule 54(b). Therefore, it must now determine whether there is just reason for delay.

### C. Just Reason for Delay

For the reasons that follow, the Court cannot find any just reason for the delay. As a result, the Court grants Plaintiff's Motion for Certification of an Immediate Appeal under Federal Rule of Civil Procedure 54(b).

#### 1. The Relationship Between the Adjudicated and Non-Adjudicated Claims

Plaintiff argues, and the Court agrees, that there is little factual overlap between Plaintiff's fraud and silent fraud claims and its breach of contract and indemnity claims. Specifically, Plaintiff claims that its fraud claims relate to events that took place before the execution of the Revised Terms and Conditions in April 2006, while its contract claims relate to conduct that took place after the execution of the Revised Terms and Conditions Agreement in April 2006.

In *Lowery*, the Sixth Circuit reversed the district court's decision granting the plaintiff's request for final judgment under Rule 54(b). 426 F.3d at 819. There, the plaintiff filed race discrimination and retaliation claims under Title VII, as well as a state law breach of contract claim for an alleged breach of the settlement agreement. *Id.* at 820. The district court granted the defendant summary judgment on the Title VII but found that there were genuine issues of material fact as to whether plaintiff was retaliated against in breach of the settlement agreement. *Id.* at 820. The plaintiff subsequently sought, and was granted a certificate for immediate appeal under Rule 54(b). *Id.* In addressing the propriety of the interlocutory appeal, the Sixth Circuit held that the plaintiff's claims could not be considered separate claims because they arose out of the same

4

aggregate of operative facts and sought to recover for the same underlying injury. *Id.* at 821. The Sixth Circuit further held that the district court overlooked the "*inherent inseparability* of the adjudicated and unadjudicated claims in this case." *Id.* at 822. The Lo*wery* court also noted that "the greater the overlap in the factual basis between the adjudicated and the non-adjudicated claims, the greater the possibility that [an appellate] court will have to revisit the same set of facts under a different theory in a second appeal." *Id.* at 823.

Here, unlike in *Lowery*, the fraud and breach of contract claims do not arise out of the same operative facts, nor do they seek to recover for the same underlying injury; there is no inherent inseparability of Plaintiff's fraud and breach of contract claims. Plaintiff claims that Defendant fraudulently induced it into a contract and then once that contract was formed, Defendant breached the contract.

### 2. Review Mooted by Future Developments in the District Court

As noted by Plaintiff, a disposition at trial of the contract claims will not moot the need for appellate review of the fraudulent claim's dismissal. Further, as will be discussed below, while the Court certainly could reconsider its ruling with respect to Plaintiff's fraud claims, especially if Plaintiff attempted to use it as a defense to Defendant's counterclaim, the Court has no current inclination to do so.

### 3. Reviewing Court being Obliged to Consider the Same Issue Twice

Given the minor overlap in the core factual basis between Plaintiff's breach of contract claims and its fraud claims, the likelihood that the Sixth Circuit will have to revisit the same facts under a different theory in a second appeal is minor.

### 4. Presence of Counterclaims

5

Defendant filed a counterclaim against Plaintiff, alleging that Plaintiff breached its contractual relationship by failing to meet various deadlines. Because Defendant's breach of contract counter-claim pertains to acts or occurrences that occurred post-April 2006, it too does not arise out of the same set of operative facts as Plaintiff's fraud claims. In addition, Defendant argues that if Plaintiff asserts fraud as a defense to Defendant's counterclaims, then this Court "could change its mind as district courts may always revisit their prior rulings." (Def.'s Resp. Br. 9). While this Court certainly could change its mind, it is highly unlikely that such a reversal would take place, especially given that the Court found Plaintiff's reliance unreasonable as a matter of law upon a fully developed record.

### 5. Judicial Economy and Miscellaneous Factors

Plaintiff argues that by granting their Motion, the Court can ensure that only one trial takes place: if Plaintiff wins its appeal, the trial will include both contract and fraud claims, whereas if its loses its appeal, the trial will be limited to the contract claims. If, however, the Court denies Plaintiff's Motion, then the parties would go to trial on Plaintiff's contract claims, at the end of which Plaintiff would appeal the Court's final judgment on the fraud claims. If Plaintiff were to prevail on that appeal, the Court would have to preside over a second trial between the parties.

Defendant responds by arguing that if the Court denies Plaintiff's Motion, the appellate court faces only one possible appeal, on the entire case. But if the Court grants Plaintiff's Motion, then the appellate court faces the possibility of two appeals.

The Court is certainly aware of the longstanding policy of the federal courts disfavoring piecemeal appeals and the possibility, albeit very minor, of two appeals in this case. But, as pointed by Plaintiff, this is not a case where certification will result in piecemeal appeals with respect to the

same set of operative facts. The underlying facts may be the same but in addressing Plaintiff's fraud claims on appeal, the appellate court need not address the operative facts of either Plaintiff's breach of contract claim or Defendant's breach of contract counter-claim.

Most importantly, though, the Court is guided by the realities of this case. In so doing, the Court takes special note of the *Lowery* court's finding that the "[t]he prospect that appellate resolution could facilitate settlement of the remaining claims is a relevant consideration that may be weighted against the possibility that the same issues might be presented in a subsequent appeal." 426 F.3d at 822 (*citing Curtiss-Wright*, 446 U.S. at 8 n.2).

In this case, as noted by the Court in its May 29, 2009 Opinion and Order, the parties' damages recovery for a breach of contract is limited by the express terms of their contractual agreement; the Agreement on Terms explicitly disclaims lost profits, loss of use, special, incidental, consequential or exemplary damages of any kind. In fact, Defendant filed a "summary of damages" for its breach of contract counter-claim against Plaintiff, where Defendant states that, excluding costs and attorneys' fees, its damages are only $42,696.30. (*See* Dkt. No. 55). Although Plaintiff has not filed a corresponding "summary of damages," pursuant to the express terms of the Agreement on Terms, its recovery for breach of contract would be similarly limited. But because Plaintiff's fraud in the inducement claim seeks to invalidate the parties' contractual agreement, it is not limited by the damages limitation in the Agreement on Terms. Plaintiff seeks monetary damages exceeding $4.5 million on its fraud claims.

The record indicates that Plaintiff expended a significant amount of money in carrying out its performance obligations under the parties' contractual relationships. Plaintiff alleges that it did so as a result of Defendant's representations to Plaintiff's Chairman, Jim Erbs, that it had a "three-

year exclusive commitment or a hundred percent supply commitment with Honeywell." (Dkt. No.60 Ex. H, Erbs Dep. 19:9-11). While the Court concluded that such reliance was unreasonable as a matter of law given Mr. Erbs' commercial sophistication, the conflict with the provisions of the Agreement on Terms,[1] Mr. Erbs' awareness of and prior objections to the conflicting provisions in the Agreement of Terms,[2] and the existence of the Non-Disclosure and Non-Solicitation Agreement,[3] the Court, nevertheless, is cognizant of the vital role Plaintiff's fraud claims play in the eventual resolution of this dispute.

**SO ORDERED.**

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: September 8, 2009

---

[1] In addition to an "Entire Agreement" clause, which stated that the Agreement on Terms superseded "all prior oral/written representations" by the parties with respect to the subject matter of the parties' agreement and in effect made it a "no reliance clause," the Agreement on Terms also contained a "Volume Projection," which stated that any volume projections were subject to change. (*See* Dkt. No. 60 Ex. P).

[2] Previous drafts of the Agreement on Terms show that Mr. Erbs' specifically objected to the "Volume Projection" provision and even stated in an e-mail that "[t]here are many material changes in this draft, and I have elected not to send it to the attorney's yet until the bulk of these conceptual differences have been hammered out." (*See* Dkt. No. 54 Exs. 5-6).

[3] The Non-Disclosure and Non-Solicitation Agreement, which was negotiated before the parties signed the Agreement on Terms in April 2006, provided that Plaintiff would not sell parts to or solicit business from Honeywell during the lesser of the period of time of that agreement or two years. That is, if Defendant had a three-year exclusive supply agreement with Honeywell, then there would be no need for a two-year maximum non-compete or non-solicitation provision.

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 8, 2009.

                                                    S/Denise Goodine
                                                    Case Manager